UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOB R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:22 CV 208 JMB |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court for review of an adverse ruling by the Social Security Administration. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### I. <u>Procedural History</u>

On May 23, 2019, Plaintiff Jacob R. filed an application for supplemental security income, Title XVI, 42 U.S.C. §§ 1381, *et* seq. (Tr. 152-165). In his application, he alleged that he became disabled on July 1, 2014 because of anxiety and depression (Tr. 182). After Plaintiff's applications were denied on initial consideration (Tr. 67-78, 84-89), he requested a hearing from an Administrative Law Judge (ALJ) (Tr. 91-96).

Plaintiff and counsel appeared for a hearing on June 10, 2021 (Tr. 29-50). Plaintiff testified concerning his disability, daily activities, functional limitations, and past work. The ALJ also received testimony from vocational expert James Israel. The ALJ issued a decision denying Plaintiff's application on June 25, 2021 (Tr. 13-23). The Appeals Council denied Plaintiff's

request for review on December 23, 2021 (Tr. 1-3). Accordingly, the ALJ's decision stands as the Commissioner's final decision.

## II. Evidence Before the ALJ

### A. Disability and Function Reports and Hearing Testimony

Plaintiff was born in October, 1992 and was 21 years old on the alleged onset date.[1] (Tr. 178). He lives with his parents in a house and completed high school in 2011, having attended special education classes (Tr. 181, 183). He had one job at a pizza place for two months in 2013-2014 (Tr. 183). He has lifetime earnings of less than $600.00 (Tr. 175).

Plaintiff's June 2019 Function Report was completed with the assistance of his father (Tr. 206). In the report, Plaintiff states his nervousness, fear of failure, tiring easily, and sore muscles prevent him from working (Tr. 199). He does, however, take care of three dogs, manage his own hygiene, walk a mile before resting, watch TV, cook microwave meals, sometimes do his laundry and take out trash, and read (Tr. 200-204). He also goes out to see movies and plays the game Pokemon Go! twice a month with a friend (Tr. 203). He nonetheless sleeps late and often, eats excessively, needs encouragement to do housework, does not pay bills or shop, does not speak much, gets angry and upset with stress, and does not handle changes in routine well (Tr. 201-205).

Plaintiff testified at the June 2021 hearing that he cannot work because he has anxiety which causes depression (Tr. 33). He was seeing Dr. James Cho for his condition but recently switched to Dr. Jaron Asher (Tr. 34). He testified that he takes various medication including Wellbutrin, "Utzima,"[2] Buspirone, and Metoprolol Tartrate, Excedrin Migraine, and other over the

---

[1] Plaintiff previously filed for benefits on January 31, 2017 alleging the same onset date of July 1, 2014 (Tr. 54). That application was denied by a different ALJ on March 1, 2019. The ALJ whose decision is under review in this case indicated that Plaintiff's onset date is April 25, 2019.

[2] Plaintiff may have been referring to Fetzima, a medication used to treat depression.

counter pain medications (Tr. 34-35). He takes Wellbutrin, "Utzima," and Buspirone for psychiatric conditions, the Metoprolol for high cholesterol, and pain medication for tendinitis in his arms (Tr. 35). He does not experience side effects unless he does not take his medication with food (Tr. 36). He wears wrist braces/wraps, that are somewhat helpful, but has not been able to do hand therapy because of his insurance limitations (Tr. 36).

Plaintiff can manage his personal hygiene; he goes out to see movies alone and with a friend; he does some housework, takes care of dogs, and takes out the trash; but, he does not drive or use public transportation (other than Uber) (Tr. 38-39). He attended a year of community college (Tr. 33). He is part of an online Pokemon Go! group, neighborhood community groups, and his high school reunion group (Tr. 39-40). He spends his time reading or in the family pool (during the summer) (Tr. 40). He had one job but had to quit because of panic attacks and anxiety; he was not taking medication at the time (Tr. 41). Plaintiff testified that his anxiety is triggered when he thinks of interacting with others and he can only interact with others after he has had alcohol (Tr. 43). He is distracted by groups of people and has difficulty talking to others and maintaining a conversation (Tr. 43-45).

Vocational expert James Israel was asked to testify about the employment opportunities for a hypothetical person of Plaintiff's age and education with no past relevant work experience who was able to perform simple and/or repetitive work that had only occasional changes in work setting and routine. The person would have no exertional limits but would avoid jobs that require close interaction with the public, i.e., no retail sales, customer service, or phone solicitation type jobs; that would avoid jobs that require close interaction with co-workers; and that would avoid tandem-type work, teamwork, and contact with co-workers to determine job duties, processes, locations, and tools. Essentially, the hypothetical person would do solitary employment but would

be able to have occasional and brief superficial interactions with supervisors, co-workers, and the public (Tr. 46). According to Mr. Israel, such an individual would be able to perform jobs available in the national economy, such as warehouse worker, packer, and assembler (Tr. 46-47). If the hypothetical individual was required to avoid fast-paced production-type work, the number of assembler, packer, and production jobs would be reduced by 40% and the number of warehouse worker jobs would be reduced by 30% (Tr. 47). The jobs would have very limited tolerance for unexcused absences and off-task behavior (Tr. 47-48).

  **B.**  **Medical and Opinion Evidence**

On June 21, 2018, when Plaintiff was 25 years old, he was evaluated by Dr. Cho (Tr. 270-271). He appeared appropriately dressed, with good hygiene, and with an "ok" mood, normal affect, linear thought process, fair insight, and superficially appropriate judgment (Tr. 270). He was assessed with "major depressive disorder recurrent in partial remission with seasonal specifier, social anxiety" (Tr. 270). Dr. Cho prescribed Fetzima and Buspirone for depression, Lorazepam for anxiety, and recommended a "SAD lamp" with continuation with psychotherapy (Tr. 270-271). He was seen again on November 8, 2019, June 1, 2020, December 21, 2020 (Tr. 460-465). In each of the sessions, Dr. Cho was unable to determine whether Buspirone was helping because Plaintiff was uncommunicative about it. He was also directed to "rebuild his life plan" with a psychotherapist but would not/had not taken the initiative despite his depression improving. There are no records from Plaintiff's subsequent doctor, Dr. Jaron Asher.

The record contains only two entries regarding psychological counseling, both prior to the relevant time period. Plaintiff had counseling sessions with Abigail Claeys on March 7, 2018 and

March 21, 2018 (Tr. 325).  The notes do not provide much information other than Plaintiff not making progress outside of therapy and being referred to other therapists (Tr. 325).

Plaintiff does not argue that he has disabling physical conditions. It is sufficient to note that Plaintiff's physical examinations were essentially normal and his conditions were treated and either improved or resolved (Tr. 318-320, 338, 360, 369-370).

Plaintiff underwent two consultive examinations in 2019.  On August 27, 2019, he was evaluated by Dr. Shea Voelker as to his mental health (Tr. 308-313).  Dr. Voelker noted that Plaintiff had a previous IQ score of 92, which was average, and that he has a diagnosis of ADHD with a history of learning disabilities (Tr. 308).  His report of daily activities, social history, education, and work history are consistent with his testimony and functional reports.  Dr. Voelker found Plaintiff to be responsive and cooperative but that he was "unable to engage in basic social discourse" (Tr. 311).  He had a "restricted" affect and a depressed mood (Tr. 312).  Nonetheless, he paid attention, was oriented, had intact memory, average intellectual functioning, and fair judgment (Tr. 312).  Dr. Voelker assessed him with major depressive disorder and social anxiety disorder (Tr. 313).  In assessing his functional capacities, Dr. Voelker found that he had moderate limitations in understanding, remembering, and applying information; marked limitations in interacting with others; marked limitations with concentration, persistence and pace; and, marked limitations with adapting and managing himself (Tr. 313).

Plaintiff was also examined by Dr. Yasua Ishida on August 27, 2019.  Dr. Ishida found that he had a normal physical examination and that he maintained good eye contact and was able to follow and understand directions.  However, Dr. Ishida noted that Plaintiff appeared to be without

impaired judgment or significant memory impairment, but he was not sure (Tr. 318-320). Finally, Dr. Ishida noted that Plaintiff appeared depressed (Tr. 320).

### III. Standard of Review and Legal Framework

To be eligible for disability benefits, a claimant must prove that he is disabled under the Act. See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing

20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734,

738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV. The ALJ's Decision

The ALJ first addressed whether the prior March 1, 2019 adverse determination should be reopened. In declining the reopen the previous determination, the ALJ found that Plaintiff presented no "good reason" as required by 20 C.F.R. § 416.1488. Plaintiff does not challenge this conclusion. As such, the ALJ determined whether Plaintiff was entitled to benefits from April, 2019, a month prior to his application date in May, 2019.

The ALJ's decision in this matter conforms to the five-step process outlined above. (Tr. 13-23). The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 25, 2019, the application date (Tr. 15). At step two, the ALJ found that Plaintiff had the severe

impairments of major depressive disorder, social anxiety, autism spectrum disorder, and attention-deficit hyperactivity disorder (Tr. 16). The ALJ further found that Plaintiff's physical problems (bilateral carpal tunnel syndrome, migraines, and urinary problems) had a minimal impact on his ability to work and are considered non-severe (Tr. 16). The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The ALJ specifically addressed listings 12.04, 12.06, 12.10, and 12.11 – covering depressive and related disorders, anxiety, autism spectrum disorders, and neurodevelopmental disorders, respectively (Tr. 17). Plaintiff does not challenge the ALJ's assessment of his physical impairments but does argues that the ALJ improperly found that his mental impairments do not meet a Listing.

The ALJ next determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: He is limited to simple and/or repetitive work with only occasional changes in work settings and routines; He must avoid jobs requiring close interaction with coworkers and the public, but occasional, brief, and superficial contact with supervisors, the public and coworkers is tolerable; He can maintain adequate concentration, persistence and pace while performing simple and/or repetitive work with only occasional changes in work settings and routines (Tr. 19). In assessing Plaintiff's RFC, the ALJ summarized the medical record; written reports from Plaintiff and his father; agency examinations and assessments; and Plaintiff's testimony regarding his abilities, conditions, and activities of daily living (Tr. 19-21). Plaintiff asserts that the RFC is not supported by substantial evidence.

At step four, the ALJ concluded that Plaintiff had no past relevant work (Tr. 21). His age on the alleged onset date placed him in the "younger individual" category. He has a least a high school education. The transferability of job skills was not an issue because Plaintiff has no past

relevant work.  The ALJ found at step five that someone with Plaintiff's age, education, and residual functional capacity could perform other work that existed in substantial numbers in the national economy, namely warehouse worker, packer, and assembler.  (Tr. 22).  Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from April 25, 2019 through June 25, 2021 — the date of the decision.  (Tr. 22-23).

## V.  Discussion

Plaintiff argues that the ALJ failed to give appropriate weight to Dr. Voelker's assessment and that the RFC is not supported by substantial evidence.  The ALJ's findings are supported by substantial evidence.

### A.  Dr. Voelker's Assessment

Plaintiff first argues that the ALJ should have given Dr. Voelker's assessment controlling weight.  As indicated above, Dr. Voelker, an examining agency consultant, examined Plaintiff on August 27, 2019 (Tr. 308-313).  Plaintiff reported to Dr. Voelker that he was diagnosed with depression and anxiety in 2015, with symptoms "present on most days without much relief" (Tr. 309).  He stated that he was treated by Dr. Cho until about August 2018, that he was not currently in treatment, but that he was taking medications Lorazepam, Buspirone, and Fetzima (Tr. 209-210).  Dr. Voelker observed that Plaintiff was responsive to questions and cooperative but that he had poor eye contact and was unable to engage in basic social discourse; he had coherent thought process and was goal directed; he had a depressed mood and restricted affect but had appropriate concentration and attention, intact memory skills, good insight, fair judgment, and average intellectual functioning.  She found that he had marked limitations in interaction with others because he "has a diagnosis of social anxiety disorder along with chronic difficulties with social contacts."  Dr. Voelker further found that he had marked limitations with concentration, pace, and

persistence because of "ongoing problems with concentration as part of his depression and anxiety conditions." Finally, she found that he had marked limitations with adaptation and managing himself because of his "diagnosis and history." If Dr. Voelker's assessment was credited, then Plaintiff would meet the Paragraph B criteria of the Listings and he would be found disabled.

In addressing Dr. Voelker's opinion, the ALJ found that:

> This opinion is not persuasive, as it is not supported by Dr. Voelker's own report (which recorded many normal results such as good abilities to complete memory and other testing, fluent speech, and a cooperative disposition as discussed below), and is inconsistent with the totality of the record (including the claimant's ability to complete various activities of daily living), which demonstrates no more than moderate mental limitations. (Tr. 19)

He further found that Dr. Voelker's evaluation only supported the moderate limitations found (Tr. 21).

As to the record, the ALJ found that Plaintiff's activities of daily living support only moderate limitations (Tr. 20). The ALJ further found that the September 10, 2019, non-examining opinion of Dr. J. Edd Bucklew, a state-agency physician, persuasive and consistent with more recent medical evidence from Dr. Cho. Dr. Buckley opined that Plaintiff only experienced moderate limitations in mental functioning (Tr. 18). In assessing the persuasiveness of Dr. Voelker's opinion, the ALJ did not merely highlight evidence that was favorable to his decision but noted throughout his opinion the sometimes conflicting and competing information contained in the medical records.

Social Security regulations direct the evaluation of medical opinion evidence. 20 C.F.R. § 404.1520c. Under these regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, the ALJ is to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors that include supportability,

consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(b)(2) and (c)(1-5). An ALJ must explain how she considered the factors of supportability and consistency in her decision, but need not explain how she considered the other factors. 20 C.F.R. § 1520c(b)(2). The supportability factor provides that "[t]he more relevant the objective evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404,1520c(c)(1). The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Plaintiff concedes that the ALJ considered and articulated the supportability and consistency factors. However, he contends that the ALJ's analysis of these factors is flawed. Dr. Voelker found, that during the examination, Plaintiff had appropriate concentration, insight, mental functioning, cooperation, and attention, which appears inconsistent with the conclusion that he had marked limitations in these areas. Certainly, a brief mental status examination, where a claimant displays characteristics consistent with being able to work, is not indicative of Plaintiff's ability to sustain such characteristics during a work week. Furstenau v. Saul, 2020 WL 3287947, *3 (W.D. Mo. 2020). However, unlike in Furstenau, the medical record does support Plaintiff's ability to maintain concentration, persistence, and pace as found by the ALJ.

During Dr. Cho's examinations in 2019 and 2020, Plaintiff consistently was found to have a normal affect, linear thought process, intact concentration and memory, fair insight, and superficially appropriate judgment (Tr. 461, 463, 464). While he reported positive for low energy, anxiety, and difficulty concentrating, he denied depression, abnormal sleep patterns, and episodic

changes in personality (Tr. 462, 463, 464). And, his depression had improved in November, 2019 (Tr. 461). Dr. Ishida also concluded that there was no evidence of impaired judgment, memory, or significant cognitive function (Tr. 319-320). Dr. Bucklew likewise found that while Plaintiff exhibited various symptoms of a mental disorder, his functional limitations were only moderate (Tr. 72). In so finding, Dr. Bucklew outlined Dr. Voelker's opinion (Tr. 72), and found that Plaintiff's statements of his symptoms were partially consistent with the medical records, but that he was only moderately limited, at most, in various functional categories (Tr. 74-76). Thus, the ALJ reasonably concluded, based on the totality of the medical record, that Plaintiff had only moderate limitations in mental functioning.

Plaintiff's activities of daily of living are but one factor that the ALJ considers. <u>Swarthout v. Kijakazi</u>, 35 F.4th 608, 612 (8th Cir. 2022). The court is mindful that the ability to perform such activities is not always indicative of the ability to maintain full-time employment. However, the ALJ found that Plaintiff's activities of daily living, including socializing with friends, going to movies, engaging in online communities, and managing himself were not consistent with the marked limitations found by Dr. Voelker. Contrary to Plaintiff's argument, the ALJ appropriately considered Plaintiff's limited activities of daily living within the context of the medical records, the opinions of medical professionals, and Plaintiff's assessment of his limitation. As such, the ALJ appropriately considered and rejected the marked limitations found by Dr. Voelker.

   B. **<u>RFC Determination</u>**

Plaintiff next argues that, notwithstanding the ALJ's evaluation of Dr. Voelker's opinion, the RFC is not supported by substantial evidence. The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect

his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184 (July 2, 1996). As the Eighth Circuit recently stated, "the RFC determination is a 'medical question,' that must be supported by some medical evidence of [plaintiff's] ability to function in the workplace.'" Noerper v. Saul, 964 F.3d 738, 744 (8th Cir. 2020) (citations omitted). "But, the RFC is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." Id. (citation and parenthetical omitted). "[A]lthough medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner, . . . based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." Id. at 744-45 (citations omitted). "Similarly, the underlying determination as to the severity of impairments is not based exclusively on medical evidence or subjective complaints. Rather, regulations set forth assorted categories of evidence that may help shed light on the intensity, persistence, and limiting effects of symptoms." Id. at 745 (footnote and citations omitted). Similar factors guide the analysis of whether a claimant's subjective complaints are consistent with the medical evidence. Id. (footnote, citation, and parenthetical omitted). Ultimately, the claimant is responsible for providing evidence relating to his or her RFC and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." Turner v. Saul, No. 4:18 CV 1230 ACL, 2019 WL 4260323, at *8 (E.D. Mo. Sept. 9, 2019) (quoting 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)).

Plaintiff argues that the ALJ erroneously relied on Dr. Bucklew's opinion because it was internally inconsistent and did not take into account Dr. Voelker's assessment. The Court

disagrees. Dr. Bucklew did address Dr. Voelker's opinion and is not internally inconsistent as to any relevant finding. Plaintiff concedes that Dr. Bucklew discussed Dr. Voelker's opinion but nonetheless stated that there was no medical opinion from a medical source (Tr. 74). This statement was obviously written in error because Dr. Bucklew did review Dr. Voelker's opinion. See Chismarich v. Berryhill, 888 F.3d 978, 980 (8th Cir. 2018) (stating that on deferential review, the Court must "strive to harmonize statements where possible").

Moreover, contrary to Plaintiff's argument, the ALJ did not just rely on Dr. Bucklew's assessment but also relied on the other medical evidence and Plaintiff's statements as to his functional capacity, as outlined above. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."); see also Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved *only* by medical evidence, we disagree." (emphasis in original)). The ALJ considered that Plaintiff had not undergone counseling or followed through with Dr. Cho's recommendations; and, there is not evidence that Plaintiff sought any emergency psychiatric care. Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 at *9 (S.S.A. Oct. 25, 2017) (stating that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."); Tuttle v. Barnhart, 130 F. App'x 60, 61 (8th Cir. 2005) ("[T]he ALJ properly discredited Tuttle based on her failure to comply with recommended treatment."). Certainly, the ALJ could consider that Plaintiff participated in social

activities, albeit limited, that he was capable of caring from himself and three dogs, and that he visited public areas including the movies and the library, in fashioning an RFC.

Finally, the ALJ considered Plaintiff's functional limitations in setting forth an RFC that limited his contact with others and that was limited to simple, repetitive work. The Eighth Circuit has held that limitations to simple, routine, and repetitive tasks may adequately account for moderate limitations in attention and concentration. See, e.g., Chismarich, 888 F.3d at 980 (moderate impairments in concentration, persistence or pace were "consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks"); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001) (the ALJ's hypothetical question "concerning someone who is capable of doing simple, repetitive, routine tasks adequately captures [the plaintiff's] deficiencies in concentration, persistence, or pace").

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

>*/s/ John M. Bodenhausen*
>JOHN M. BODENHAUSEN
>UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of January, 2023.